The second case this morning is United States v. Travis Montgomery. Mr. Hillis, this is your case 2. Okay, you may proceed. May it please the Court, Counsel. Again, my name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Travis Montgomery in this case. There is no standard of review issue here. There is a brief mention by the government about how the district court did not clearly err, but I would like to put that, I think, in its appropriate context. The application of the law is subject to de novo review. Factual issues would be subject to the clearly erroneous standard, and we are not making any factual challenges of the record that's before this Court. So that steers us towards whether or not the district court appropriately considered and applied the relevant criteria in determining that there should be a two-level premises enhancement under the circumstances of my client's case. And I'll point to three things from the commentary that are relevant for deciding whether or not a premises enhancement should be applied. But before I do that, I'll just say as a backdrop, we're originally considering with premises enhancements in stash houses, drug dens. And this has now had a much broader sweep through the use of the word premises, which is extraordinarily broad and can cover darn near anything. It could be a lot that has no structure on it, I suppose, that would nevertheless be consistent with the definition of premises in a broad interpretation. Here we have a storage unit, and I found no authority that directly tells us whether or not a storage unit always qualifies as a premises. But I would then by default look to, as I think the district court should have, the relevant criteria in the application note. And we'd want to consider important things like who had a possessory interest. Well, we begin with that one. We see that the unit was leased by my client's sister. So my client had no possessory interest. As a procedural error problem in this case, the district court didn't consider that. It was a highly salient factor in deciding that the premises enhancement should apply. Did my client exercise complete control over the unit? Again, the answer is no. He was able to access it through the code that his sister provided him. He was there sometimes. She was there others. And we do not have information to suggest anything other than he did not exert exclusive control over the storage unit. As for the frequency of illicit use, we have, I think, in total, three drug transactions. Importantly, none of them occur inside of the unit. And so if the government were to have perhaps more information, a greater record of surveillance, et cetera, could at least point to how my client went into the facility on all the occasions and there were more of them. I think we'd have a much harder time saying about the frequency of illicit use not being relevant determination. But it wouldn't be a death knell because we have the other two factors that are wholly unaccounted for by the district court in assessing the penalty. I'm sorry, Judge. In terms of his frequency of use of the storage unit for drug dealing, I thought there was some circumstantial evidence that it was more frequent than the three surveilled buys because of the owner of, not the owner, but the proprietor of the storage unit facility had records of how often someone was going in and out of that storage unit. Right. So that's the big question. Who's the someone and for what purpose? But isn't it a logical and certainly reasonable inference that because the only other thing that was in that storage unit were some old tires in the corner and everything else was the implements of drug dealing and that the sister was the lessee? Right. So at the time they enter and recover the items there, we know what is left. We also don't know what was in there before. There could have been bedroom sets and living room furniture and everything else that preceded what was there on the day of execution, right, where they went into the unit. And for that matter, who goes in is an important thing. So you can surmise and speculate that it's my client, but we're not supposed to as district court judges surmise and speculate about anything. There's a burden of proof, the government is to meet it, and district courts are entitled to make permissible inferences. But if you don't know between a group of people who it was who went in, you can't not train your attention on the one person who may support the inference. We also don't know, for example, for how long the storage unit or I guess there are two, right, the storage units were leased out and was being accessed by either the sister or Mr. Montgomery. And so to a large extent, like when you think of the typical analysis involving a residential home, right, one of the things we look at is, well, how long did they rent the home for? And so if they only used it for, you know, let's say drug operations or what have you, two days, and they've rented it for 10 years, we would question whether that's a primary principle use. Here we don't have the denominator, right? We don't know for, at least in the record, there's not much information on kind of how long the storage unit was used for. Let's say she had it for, Ms. Morris had it for 10 years. That would put the 22 days that are at issue here in more perspective. What if it was only 22 days? Well, then I think the analysis would be clear that it probably was the primary principle use. But is there anything in the record that would help us establish the denominator? No, Judge, but I think that helps us because, again, it's a burden of proof problem. So if the government wants to come in and say he only rented it for 22 days or his sister only rented it for 22 days, as a percentage, three transactions is fairly enormous. Then we would have a stronger basis to impose the enhancement. But absent that information, we can only, again, surmise and speculate about the duration of permissible use versus impermissible use. What should weigh against the imposition of the enhancement? Again, though, to say nothing of the other factors, which I think are enormous. If it is not a possessory interest that you have and you don't have control over it, those are things that should have at the very least been considered and accounted for in the district court's determination. You cannot just tack on the two levels without consideration of the required criteria. And so with that, I will reserve the balance of my time. That's fine. Thank you. Mr. Reitz. May it please the Court, Brian Reitz for the United States. I want to take the possessory interest first and then go to the frequency. Mr. Montgomery's arguments on the interest stand athwart this Court's precedence. This Court does not require a possessory interest, nor does it require exclusive control. That's in Beecher, Ford, and the First Circuit case in Jones. So I think his arguments on that are just entirely wrong under this Court's precedence. On the frequency, we know it was rented for a month. I don't think the— It was rented only for one month, or was it month to month? That's a good point. The agent at the sentencing hearing testified it was the end of May to the beginning of June. Before that, we don't know. So could the denominator, to use your honors term, stretch further? I don't know. I think we should focus on the month because that's actually what we have in the record. But I think that's Mr. Hillis' point. If that's all we have in the record, and it could be that Ms. Morris and Mr. Montgomery had access to this storage unit for two years on a month-to-month basis, which typically these storage units are rented on a month-to-month basis, that would seem to be a key factor in the analysis. So let me start with Ms. Morris. Ms. Morris is actually irrelevant to this analysis. This Court has said in Jones the focus is on the defendant's primary use, not another person in the house. So it matters what Mr. Montgomery's primary use of the storage unit was. And at least in that month, we essentially have no evidence of any licit use of the storage unit. What we have is a confidential informant saying Mr. Montgomery stored and sold drugs from the unit. We have three- No, no. I give you, Mr. Riggs, I acknowledge that if, and I think Mr. Hillis acknowledges too, that if he was renting it for 22 days or even 30 days, then I think the government makes a good case that the storage unit was used primarily or principally for manufacturing distribution of drugs. But the question is, you know, is the record sufficient for us to make that analysis? Yes, because I think what the evidence the government introduced was a month, and we're going on that month. Everything else is speculation. Of course, both sides at a sentencing hearing can introduce evidence that Mr. Montgomery was using- But it's the government's burden, right, to- It is the government's burden. The evidence we have is that one month. If there was something beyond that month, we don't know about it. We know of a month. So if there's something- That's kind of like saying, well, we have these three drug transactions, and those are the only things we're going to introduce, and that's all that's in the record. So therefore, it's 100%. So I think the focus on the drug transactions is just a thumbnail sketch too, because the entire time of a month, the inference is that Mr. Montgomery was storing drugs there. Certainly, those three drug deals didn't exhaust his supply of drugs, because whenever the storage unit was searched after those three transactions, there were still copious drugs. There was drug implements. There was cash. So the clear inference there is that, one, the unit was being used for storage of drugs the entire time, and likely, I think just the clear inference is that the only drug transactions that Mr. Montgomery did weren't to the confidential informant. So I'm not really sure. I think the starting point is somewhat of a distraction, because we have one month. That's what everyone focused on below. No one said anything beyond the month, and that one month, the primary purpose was drug dealing. It certainly was more than an incidental use for that one month. And beyond that, I'm not even sure about prior use. I think a legal use of a house can turn into a stash house. I don't think there's anything in either the guideline or case law that says if I have a house for 20 years, and on year 20, I turn into a drug dealer, and for the next month, I use it as a storage house, or as a stash house for drugs to sell drugs from it, the house isn't a stash house, because it is a stash house in that month. Right. And I think there's right in the question then becomes is that enough in that context for the premises to have been the primary and the drug manufacturing distributing being the primary personal use while that person owned the house, right? The primary use in a residence context, I agree, is much more difficult to disentangle what the primary use is. But here we have a stash house that, of course, no one is living in, or a storage unit that no one is living in, and the only thing that's legal in the storage unit are four tires. I know my opponent makes up this idea that there were kitchen and, you know, furniture in there, but I don't know how they were moved out if every entry into the storage unit was a few seconds like this. You can't move, like, a living room set in a few seconds. Did the government look at or investigate how long the storage unit was being rented out by Ms. Morris and or Mr. Montgomery? Yes, and I think the only thing we have is the month. I agree it's unstated whether there were month-to-month leases, but the evidence that we introduced was just a month. I think you can infer from that that maybe that was the only month, or, I mean, perhaps we just didn't discover it. I don't really know, but I think the clear inference there is that there was the one month. I mean, the agent testified that it was the end of May through the beginning of June. I was a little unclear on the circumstantial evidence of frequency of entry, not the surveilled buys, but the evidence from the proprietor of the storage unit that showed either, and perhaps you could clarify this, that the storage unit was entered several times a day during the course of this one-month period, or that the block of storage units in which this particular storage unit was was entered. So my understanding of how the storage unit works is that it was both. I don't want to say that with 100% certainty, but my understanding is that testimony came in, and there was the entry into the gate, and each time there was an entry into the unit. That's my understanding, but I don't think I can say that. Well, that's kind of an important fact, right? If somebody else is entering the gate several times a day to go to a different storage unit. Well, that's not right, Your Honor, because the sister's code was being used, so I think the court could certainly infer from that that it was the defendant. Yes. That's what was unclear, because it doesn't say that in the transcript, that code is being used. It says the gate is being accessed several times a month. The testimony was not specific. My memory of the testimony might be uncertain, but I think at least if you read it in context, the implication was that it was Mrs. Norris' code. Maybe that wasn't as explicit as we had hoped. I didn't see that. Okay. My understanding of that was that this was discussed because it was Mr. Montgomery's sister's code being used, because, of course, otherwise the storage unit writ large being entered is totally irrelevant. I mean, the storage unit has, I don't exactly know how many units, but it has a number of units. So the testimony was only relevant because it was the sister's code being used, and from that we think the judge clearly made a reasonable inference that it was Mr. Montgomery entering the unit. Is there anything like this in the case law anywhere? One month, something other than a house. One month is the shortest we found. We found a number of weeks, so two or three months. One month is shorter. I would just say that the guideline does not set a minimum time requirement, and we think when focusing on the actual things the guidelines talk about, that is control, maintenance, and primary purpose, we meet all of those. I don't think that the time really matters for control or really primary purpose. It probably comes into play about maintenance, and I'm not sure we would say someone maintains something for a matter of hours, but I think a month is certainly long enough. But we would be setting a new bar if we sustained this guideline in these circumstances, a lower bar? If the court thinks about that bar only as the time period, as far as I know, yes, this would be the shortest time period. I think when taking the totality of the circumstances, I don't think this is the low bar for all the other reasons, but as far as time, yes, I think this is the shortest it would apply to, but I don't think there's anything either in the text of the guidelines or in precedent interpreting the guideline that requires any set length of time, and a month is not an entirely short period of time. Well, we do have the dicta from Ford that talks about the facts of that case representing the outer limits of the guidelines application. Yes, Your Honor. I think the Ford, there was a lot going on there, and while one of the factors was short period of time, I think the fact that it was a room in someone else's house and other people could enter, I think Ford was the outer limit because of all the factors taken together. I think here the really only factor that would be the outer limit would be the time, and the time is maybe somewhat baked into the guideline as far as maintenance, but there's no set requirement under the guidelines of time. Mr. Woods, when you talked about the government putting in evidence with regard to the fact that it was rented for that one month, are you referring to Agent Robertson's testimony? Yes. Because the only thing I find is, so the question was, how do you describe the frequency of access? And the answer was, so looking from June, for May 30th to June 29th, we noticed that it opened and closed very short, quick visits several times a day. That's on page 24, but I don't see any reference to whether or not that was the length of the lease or whether it was rented for only that month or whether it was rented. There's no discussion about the lease at all. It just says we just looked for that month, and we noticed all of these frequency of access. I took that. I understood that as there was a month lease that may be a little further than the testimony supports. That's how I understood that. But that's what you're referring to. That is what I was referring to. I take that to mean there was a month. I don't think there's anything in the record that excludes the possibility that it was rented beyond that. If I implied that, I did not mean to. I took that statement to mean there was a month. We think that month is what matters. That's certainly how everyone approached it below, but I can't exclude the possibility that it was rented beyond that. Of course, if the court thinks the last month after having rented it for a year is dispositive, then so be it. We just think that the one month is what matters here. And you're not making any harmless error argument here? No. The sentence was below the guidelines. I think this would have been a great case for the judge to say the sentence would have been the same otherwise, but she did not. So this is a harmful error if there is an error. Got it. Thank you. Thank you. Thank you. Thank you, Mr. Reitz. Mr. Hillis. Section 2D1.1 Application Note 17 lists the relevant criteria for a court to consider when imposing the enhancement. Courts aren't free to disregard that. It needs to – anybody in analysis needs to account for it. And the government came very close, it seemed to me, to say that that's not something that the judge needs to do and the case law I don't think supports that. And by the way, so far as I understand, Ford said that you have to establish information that shows somebody is more than a casual visitor, that they exercised control or some possessory interest of the premises. So it's going to take into account other information that shows, again, dominion, control, exercise of authority in a place. None of the cases, I think, can support the idea that you can just jettison inconvenient information as criteria for a totality analysis. But apart from that, the government wants to use a lack of information to its advantage throughout this, and I think that's a problem, again, with the government having, of course, the affirmative duty to meet its burden with necessary evidence at the time of the imposition of sentence for the judge to consider. So just by way of reference, now I'm a little confused about this code for the access. If there's a code and it has a gate and there are a hundred people of access to the units and everybody has the same code to get through the gate and then they have separate access to the unit for a key or a separate code for that, access with the sister's code, if it's the same code as everybody else, tells me very little about who's going in and what they can do other than enter the lot, for instance. So that's unclear to me, and I would have a much clearer picture of many of these things if there was just the necessary facts as proven through testimony or through documentary evidence about the length of the lease and the length of the stays when people are there. You cannot snap off one month from the year if it was at least that long and say, look at this, these three controlled buys are now evidence of a primary use that's illicit because it's only one month. The whole scope of the rental needs to be taken into consideration. And we don't know what was moved and when, but the government wants to pile inference upon inference. And here, if somebody has dealt dime bag quantities and then elects to go for a big score at the very end and suddenly has all of the trappings of a bigger operation, I don't know that that is emblematic of the scope of the operation theretofore, but I will say that if the government had evidence of the controlled buys that actually occurred in the unit, that we'd have some sense of what was there through the relevant time period, it would be much more useful. But it has this bare record, and it asks the court to overlook all of the gaps and to make inferences that could be supportive of one thing but could just as easily be supportive of another. Like it wasn't used that often, or the quantities weren't that great as a typical matter. Things like this are important. The government needs to meet its burden if it wants these enhancements. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.